1  Mitchell Taylor Button
2  Dusty Button
   101 Ocean Sands Ct.
3  Myrtle Beach, SC 29579
   310-499-8930
4  Worldofdusty@gmail.com

5

6

7              UNITED STATES DISTRICT COURT

8          FOR THE WESTERN DISTRICT OF WASHINGTON

9

10

11

12 | MITCHELL TAYLOR BUTTON AND    Case No: 3:25-cv-05622 DGE
13 | DUSTY BUTTON
                                          **COMPLAINT**
14 |            PLAINTIFFS,
                                          **JURY DEMAND**
15 | V.

16

17 | JOHN JIMISON (A/K/A @FORMULADERP)

18 |            DEFENDANT.

19

20

21

22

23

24

25
                  COMPLAINT AND JURY DEMAND
26                              1
27

I.   INTRODUCTION

1. Plaintiffs Mitchell Taylor Button and Dusty Button ("Plaintiffs" or "the Buttons") bring this action to hold Defendant John Jimison—known online as @formuladerp—accountable for a deliberate and malicious smear campaign launched under the guise of internet parody.

2. Defendant operates a high-profile Instagram account with over 90,000 followers and considerable influence in the automotive and motorsports community. His profile falsely suggests comedic intent, labeling the account as "the premiere motorsports series for mentally unstable alpha males" and "parody," but his most serious and damaging post was a calculated and defamatory attack against Plaintiffs.

3. On or around September 30, 2021, Defendant used his platform to disseminate false and incendiary claims that Plaintiffs were rapists, child predators, and serial abusers. These claims were not presented as opinions or jokes. They were asserted as facts.

4. Defendant amplified these lies using targeted hashtags like #SEMA and #formuladrift to ensure viral exposure among Plaintiffs' business networks. His goal was not awareness—it was annihilation: to destroy reputations, sever relationships, and incite harassment.

5. Defendant knew his statements were false. He deliberately distorted a Boston Globe article, omitting critical qualifiers such as "alleged" or "civil complaint." He weaponized his reach to provoke outrage and cause lasting personal and professional harm.

6. Defendant's actions triggered real-world consequences. Upon information and belief, he himself contacted SEMA and falsely labeled Plaintiffs as sexual predators. Others followed suit, causing reputational devastation and a cascade of lost partnerships and business ventures.

7. The Buttons were never arrested, charged, or convicted of any crime. Nevertheless, Defendant's defamatory post incited threats to their lives and to their child, business cancellations, and ongoing psychological trauma.

8. When confronted about the falsity and danger of his statements, Defendant responded with sarcasm and hostility. In reply to multiple commenters who warned him the post was defamatory and dangerous, he mockingly stated, "the apologists are real easy to spot in here and it's pretty f***ing gross," and "I took out the word 'disgusting' to make you feel better." He later deleted those replies along with other critical comments.

9. His false accusations remain online today and continue to cause harm. No retraction, clarification, or apology has ever been issued.

10. Defendant has since repeated similar defamatory statements, including in 2025, both online and in person.

11. Plaintiffs bring this action for defamation per se, false light invasion of privacy, intentional infliction of emotional distress, tortious interference, civil conspiracy, and equitable relief. They seek to hold Defendant accountable for his targeted and damaging campaign of lies.

12. Plaintiffs have been adjudicated not to be public figures in other defamation litigation, including in *Humphries et al. v. Button*, No.

2:21-cv-01412-ART-EJY (D. Nev.). The court in that action found that Plaintiffs are not limited-purpose public figures, which removes any heightened burden under defamation law.

13. In that same Nevada action, Plaintiffs have submitted over 500,000 pages of documents and materials rebutting the underlying allegations. No criminal charges have ever been filed, and as of July 31, 2025, the court has removed the pretrial and trial dates due to the volume and weight of exculpatory evidence. A motion for summary judgment is currently pending.

II. PARTIES

14. Plaintiff MITCHELL TAYLOR BUTTON is a citizen and resident of South Carolina.

15. Plaintiff DUSTY BUTTON is a citizen and resident of South Carolina.

16. Upon information and belief, Defendant JOHN JIMISON is a citizen and resident of Washington State in Pierce County and operates under the handle @formuladerp.

III. JURISDICTION AND VENUE

17. This Court has jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds \$75,000.

18. Venue is proper in this District under 28 U.S.C. § 1391 and RCW 4.12.025 because Defendant resides in this District and committed wrongful acts here.

IV. FACTUAL ALLEGATIONS

19. On or about September 30, 2021, Defendant published an Instagram post featuring Plaintiffs' image and the following false and defamatory statements:

   1) "Dancers have come forward... alleging the couple raped her while she was still a minor."

   2) "Dusty Button coaxed victims into situations where they became prey for this serial abuser."

   3) "If anyone in the SEMA or Formula Drift communities... has been a victim of these people, please reach out to law enforcement.

20. Defendant used hashtags including #SEMA and #formuladrift to intentionally target Plaintiffs' professional industries.

21. Defendant's false accusations reached individuals and companies in Plaintiffs' direct professional circles. Several of these parties—including sponsors, event partners, and production collaborators—terminated their business relationships as a direct result. The reputational fallout was immediate and industry-wide.

22. These statements were knowingly false. Plaintiffs have never been arrested, charged, or convicted of any such crimes.

23. Defendant cited a Boston Globe article but omitted its clear framing of the claims as civil allegations, removing all context to falsely portray guilt as fact.

24. The false narrative that Defendant exploited originated in a highly publicized civil lawsuit filed in the District of Nevada in 2021 (*Humphries et al. v. Button*, No. 2:21-cv-01412-ART-EJY), in which Plaintiffs were sued for $131 million based on meritless and unsubstantiated allegations.

25. These statements arose from a **civil** lawsuit filed in the District of Nevada, *Humphries et al. v. Button*, No. 2:21-cv-01412-ART-EJY. Despite the lack of criminal charges, Defendant distorted the allegations into proven criminal conduct.

26. That civil lawsuit generated widespread global media coverage and misinformation, falsely implying criminal conduct when in fact Plaintiffs were never arrested, charged, or convicted. Law enforcement declined to pursue charges, citing a lack of evidence and inconsistent allegations.

27. Defendant and others weaponized this false narrative online, intentionally blurring the line between civil allegations and criminal guilt to mislead the public and harm Plaintiffs.

28. Defendant was aware of the civil nature of the allegations, especially because the Plaintiffs publicly posted clarifying information—including filings and a redacted summary judgment motion—on their verified Instagram account, @WeTheButtons, which Defendant followed.

29. Defendant's influence online is *substantial*. With over 90,000 Instagram followers and high engagement rates, he knew his post would go viral—and it did.

30. The Instagram post received more than 250 comments, and thousands of shares. It was reposted by Defendant and others across X/Twitter, Facebook, and automotive and dance forums. Some of these posts were later deleted, suggesting Defendant's awareness of their defamatory nature.

31. Numerous individuals—including Defendant himself, upon information and belief—contacted SEMA and falsely claimed Plaintiffs were sexual predators.

32. Plaintiffs and their child were subjected to violent threats and hate messages. Threats included promises to "hunt them down and hang them" and to harm their child.

33. Defendant responded to public concern with mockery, sarcasm, and the deletion of critical comments to cover his tracks.

34. Defendant frequently posted images of firearms and hostile rhetoric during this time, escalating public fear.

35. He continued to repeat defamatory statements in 2025 to third parties both online and in person.

36. As a direct and foreseeable result, Plaintiffs lost business relationships and brand sponsorships with Red Bull, BLOCH Inc., SEMA, Capezio, Toyo Tires, Brixton Forged, and others. Their businesses—Button Brand and Bravado by Dusty Button—were irreparably harmed.

37. Defendant's close associates assisted in concealing his identity, evidencing a coordinated effort to evade accountability.

38. Upon information and belief, in addition to his public posts, Defendant made further defamatory statements about Plaintiffs through private messages and direct communications via social media platforms, text messages, and online forums. These communications continued to spread false and malicious claims with the intent of damaging Plaintiffs' reputations and relationships.

V.     EQUITABLE TOLLING

39. Defendant's concealment and deletion of evidence made identification nearly impossible. Plaintiffs acted with diligence but were obstructed by his deliberate evasion.

40. Plaintiffs discovered Defendant's identity in May 2025 and filed this suit promptly thereafter.

41. The statute of limitations should be equitably tolled under the discovery rule and due to fraudulent concealment.

VI. NON-SLAPP STATEMENT

42. This is not a SLAPP suit. Defendant's statements were provably false factual assertions made with actual malice and are not protected under the First Amendment or Washington Constitution.

VII. CAUSES OF ACTION

### Count I – Defamation Per Se

43. Defendant published false, defamatory statements asserting Plaintiffs were sexual predators.

44. These statements were not privileged, and damage is presumed under Washington law.

45. Defendant acted with actual malice.

### Count II – False Light

46. Defendant placed Plaintiffs in a false light that would be deeply offensive to a reasonable person.

47. The false light implied they were convicted criminals, which was knowingly untrue.

### Count III – Intentional Infliction of Emotional Distress

48. Defendant's conduct was extreme, reckless, and intended to cause emotional harm.

49. Plaintiffs suffered substantial and ongoing psychological trauma.

50. Defendant's conduct—including public defamation, incitement of violence, mocking of critics, deletion of warnings, and a prolonged campaign to destroy Plaintiffs' reputations—was extreme and outrageous.

51. In addition to the public post, upon information and belief, Defendant continued spreading false and malicious statements about Plaintiffs through private social media messages, text communications, and online forums. These private channels compounded the damage and increased the fear, anxiety, and reputational destruction experienced by Plaintiffs.

52. As a result, Plaintiffs suffered severe emotional distress including trauma, humiliation, fear for their safety and that of their child, professional isolation, and psychological injury.

53. Defendant's actions were a substantial factor in causing Plaintiffs' emotional distress.

### Count IV – Tortious Interference

54. Plaintiffs had valid business relationships and economic expectancies.

55. Defendant intentionally disrupted those relationships through false and malicious statements.

### Count V – Civil Conspiracy

56. Defendant conspired with others to conceal his identity and evade responsibility.

57. Overt acts included deletion of evidence and coordinated obstruction.

58. Plaintiffs were harmed as a direct and foreseeable result.

59. Defendant conspired with others to defame Plaintiffs and evade detection. Defendant's friends and associates knowingly aided in

concealing his identity and preserving the defamatory narrative online.

60. Upon information and belief, individuals acting in concert with Defendant also disseminated false statements across private group chats, industry communications, and anonymous forums. These individuals knew or should have known the statements were false and acted in reckless disregard of the truth.

61. Defendant and his co-conspirators committed overt acts in furtherance of the unlawful objective, including deleting clarifying replies, reposting across platforms, refusing to identify the source, and maintaining the defamatory content on major social media platforms to ensure ongoing harm.

62. Plaintiffs suffered injury and loss as a direct and proximate result of this conspiracy.

## Count VI – Injunctive Relief

63. Plaintiffs seek a permanent injunction requiring Defendant to:

1) Remove defamatory content;

2) Refrain from future defamatory acts;

3) Publish a formal retraction.

## Count VII – Declaratory Relief

64. Plaintiffs seek a declaration that Defendant's statements were false, defamatory, and made with actual malice.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request:

1) Compensatory damages in an amount to be proven at trial;

2) Punitive damages;

3) Injunctive relief as described above;

4) Declaratory relief;

5) Any other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully dated this 17th day of July, 2025,

_____

Mitchell Taylor Button and Dusty Button (pro se)

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was emailed to newcases.tacoma@wawd.uscourts.gov on July 17th, 2025.

Dated this 17th day of July, 2025,

/s/ _____

Signature of Plaintiff Dusty Button (*Pro se*)

/s/ _____

Signature of Plaintiff Mitchell Taylor Button *(Pro se)*