UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MITCHELL TAYLOR BUTTON et al., | CASE NO. 3:25-cv-05622-DGE |
| Plaintiffs, | ORDER GRANTING SPECIAL MOTION FOR EXPEDITED RELIEF (DKT. NO. 18) |
| v. | |
| JOHN JIMISON, | |
| Defendant. | |

Before the Court is Defendant John Jimison's special motion for expedited relief pursuant to Washington's Uniform Public Expression Protection Act ("UPEPA"). (Dkt. No. 18.) For the reasons set forth below, Defendant's motion is GRANTED.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case has its origins in a July 2021 lawsuit filed by several women against married couple Mitchell Taylor Button and Dusty Button[1] ("the Buttons") in the United States District

---

[1] The complaint originally named only Mitchell Taylor Button as a defendant, but was amended on September 23, 2021 to add Dusty Button. (*See* Dkt. No. 20 at 24.)

ORDER GRANTING SPECIAL MOTION FOR EXPEDITED RELIEF (DKT. NO. 18) - 1

Court for the District of Nevada.[2]  The lawsuit alleges the Buttons, who are well-known members of the dance community, "exploited their position of power and influence in the dance world to sexually abuse young dancers across the country."  (Dkt. No. 20 at 25.)  The lawsuit contends the Buttons inflicted "an intentional combination of emotional control, financial manipulation, and sexual abuse against young dancers across the country since as early as 2007[.]"  (*Id.*)  On September 28, 2021, the *Boston Globe* published an article reporting on the case, which read, in relevant part:

> A second area dancer has come forward as part of an expanded lawsuit against a former star dancer with the Boston Ballet and her husband, alleging the couple raped her while she was still a minor.
>
> The dancer, who is identified in court filings only as Jane Doe 100, is one of five female dancers who say Mitchell Taylor Button and his wife, former Boston Ballet principal dancer Dusty Button, "exploited their position of power and influence in the dance world to sexually abuse young dancers across the country."
>
> The original suit, brought by Boston Ballet's Sage Humphries and another dancer, Gina Menichino, named only Mitchell Button, who has several aliases but often goes by Taylor, as a defendant. The expanded lawsuit, filed late last week in US District Court in Nevada, adds three new plaintiffs and expressly names Dusty Button as a defendant.
>
> 'What you have here is the highest level of betrayal,' said Sigrid McCawley, an attorney representing the plaintiffs. 'You see the use of a famous female ballerina to coax these victims into a situation where they become prey for this serial abuser.'

(Dkt. No. 20 at 78–79.)  On September 30, 2021, Defendant John Jimison, a/k/a formuladerp, posted the following message on Instagram:

---

[2] *Humphries v. Button*, Case No. 2:21-cv-01412-ART-EJY (D. Nev. July 28, 2021).

ORDER GRANTING SPECIAL MOTION FOR EXPEDITED RELIEF (DKT. NO. 18) - 2

formuladerp If you're in car culture in general, you might be familiar with the #buttonbuilt ferraris - they infamously made waves at SEMA with both the 328 GTS, and a 355TT. Some of us in the drift world are familiar with him, his work, and his ballerina wife, Dusty. A shocking series of events has led to where we are now:

Dancers have come forward as part of an expanded lawsuit against a former star dancer with the @bostonballet and her husband, alleging the couple raped her while she was still a minor.

The dancer, who is identified in court filings only as Jane Doe 100, is one of five female dancers who say Mitchell Taylor Button and his wife, former Boston

Ballet principal dancer dusty_button, "exploited their position of power and influence in the dance world to sexually abuse young dancers across the country."

The original suit, brought by Boston Ballet's @sagenicolehumphries and another dancer, @ginamenichino, named only Mitchell Button, who has several aliases but often goes by Taylor, as a defendant. The expanded lawsuit, filed late last week in US District Court in Nevada, adds three new plaintiffs and expressly names Dusty Button as a defendant.

"What you have here is the highest level of betrayal," said Sigrid McCawley, an attorney representing the plaintiffs. "You see the use of a famous female ballerina to coax these victims into a situation where they become prey for this serial abuser."

If anyone in the SEMA or Formula Drift communities that see this post and has been a victim of these people, please reach out to law enforcement. •••
#buttonbuilt #SEMA #formuladrift

September 30, 2021

(Dkt. No. 19.)

In July 2025, the Buttons filed a Complaint against Jimison in this Court, asserting causes of action for: 1) Defamation; 2) False Light; 3) Intentional Infliction of Emotional Distress; 4) Tortious Interference; and 5) Civil Conspiracy. (Dkt. No. 5 at 11–14.) The Buttons also request injunctive and declaratory relief. (*Id.* at 14–15.) On September 17, 2025, Jimison, who did not have counsel at the time, filed an Answer to the Buttons' Complaint. (Dkt. No. 12.) On September 21, 2025, the Buttons filed a motion to strike Jimison's Answer. (Dkt. No. 13.) On September 29, 2025, attorneys Jessica L. Goldman and Jesse L. Taylor entered appearances on behalf of Jimison. (Dkt. No. 14.) On October 17, 2025, the Court granted the Buttons' motion to strike Jimison's Answer, finding the interests of justice would be served by permitting Jimison to file an Answer with the benefit of counsel. (Dkt. No. 17.) The Court gave Jimison 21 days to file an amended Answer. (*Id.*)

On October 24, 2025, Jimison filed a special motion for expedited relief pursuant to UPEPA seeking to dismiss the Buttons' claims. (Dkt. No. 18.) On November 3, 2025, the Buttons filed a motion to strike Jimison's motion for expedited relief. (Dkt. No. 21.)

## II.    LEGAL STANDARD

Washington State designed UPEPA, its anti-SLAPP (strategic lawsuit against public participation) law, "to protect important public speech from frivolous litigation by providing a procedural scheme that disposes of such cases early and swiftly in the litigation life cycle." *Thurman v. Cowles Company*, 562 P.3d 777, 778–779 (Wash. 2025).  Under UPEPA, parties who are served with a pleading asserting a covered cause of action can file a "special motion for expedited relief."  *Id.* at 779; Wash. Rev. Code § 4.105.020.  A "covered cause of action" is an action brought against a party based on the person's exercise of the constitutional right of freedom of speech or of the press on a matter of public concern.  *Id.*; Wash. Rev. Code § 4.105.010(2)(c).

"It is the moving party's burden to establish that UPEPA applies to the cause of action." *Jha v. Khan*, 520 P.3d 470, 477 (Wash. Ct. App. 2022) (citing Wash. Rev. Code § 4.105.060(1)(a)).  "Once the moving party has satisfied this requirement, the burden shifts to the responding party to establish that a statutory exception applies."  *Id*. (citing Wash. Rev. Code § 4.105.060(1)(b)).  If the responding party does not demonstrate that an exception applies, the trial court must dismiss the action with prejudice if either:

> (i) The responding party fails to establish a prima facie case as to each essential element of the cause of action; or
>
> (ii) The moving party establishes that:
>
>> (A) The responding party failed to state a cause of action upon which relief can be granted; or
>>
>> (B) There is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the cause of action or part of the cause of action.

*Id*. (citing Wash. Rev. Code § 4.105.060(1)).

"Although UPEPA is a creature of Washington law, it can nonetheless be applied by federal courts." *Lingeri v. Parker*, Case No. C25-0829-KKE, 2025 WL 2782919, at *3 (W.D. Wash. Sep. 30, 2025).

### III.   DISCUSSION

**A. The Buttons' Motion to Strike Jimison's Special Motion for Expedited Relief (Dkt. No. 21)**

As a preliminary matter, the Buttons move to strike Jimison's special motion for expedited relief. (Dkt. No. 21.)  The Buttons argue Jimison violated the Court's October 17, 2025 order, which granted Jimison 21 days to file an amended answer. (*Id.* at 5.)  The Buttons contend the Court's order was "explicit and unambiguous" in granting Jimison leave to file only an amended answer, not a dispositive motion. (*Id.* at 6.)  The Buttons contend any defenses available to Jimison pursuant to Federal Rule of Civil Procedure 12(b) were waived after he filed his Answer, and contend Jimison's motion contains immaterial and impertinent matter that should be stricken pursuant to Rule 12(f). (*Id.* at 8–9.)

The Buttons ask the Court to stay or extend their deadline to respond to Jimison's motion for expedited relief, because the motion "is subject to being stricken" and requiring them to provide a response "would cause unnecessary burden and inefficiency." (*Id.* at 6.)  The Buttons request that if the Court declines to strike Jimison's motion, they be granted an additional seven days after the Court's ruling to file a response. (*Id.*)

Jimison argues the Court's order does not prohibit him from filing a motion for expedited relief. (Dkt. No. 22 at 5.)  Jimison contends the Court's order does not limit him to *only* filing an amended Answer and nothing else. (*Id.*)  Jimison asserts he did not waive any Rule 12(b) defenses, noting his original Answer, filed pro se, does include the defense of failure to state a claim. (*Id.* at 5–6.)  Jimison further argues his original Answer is no longer operative since the

Court granted the Buttons' first motion to strike. (*Id.* at 6.) Jimison notes that even if his stricken pro se Answer constituted a responsive pleading, his motion for expedited relief could still be evaluated as a motion for judgment on the pleadings pursuant to Rule 12(c). (*Id.*)

While the Court may have anticipated Jimison filing an amended answer based on his response to the Buttons' first motion to strike (Dkt. No. 15 at 6), it did not prohibit him from filing any other motion or pleading otherwise permitted by the federal rules. Under Rule 12(a)(1)(A)(i), a defendant must generally serve an answer "within 21 days after being served with the summons and complaint." However, a defense of failure to state a claim upon which relief may be granted "may be asserted in an answer, through a Rule 12(b)(6) motion to dismiss, through a Rule 12(c) motion, or at trial." *Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1155 (E.D. Cal. 2010), citing Rules 12(b), 12(h)(2). Even if Jimison had failed to assert this defense prior to filing his original Answer, this would not have forfeited the defense. *See Estate of Elkins v. Pelayo*, Case No. 1:13-CV-1483 AWI SAB, 2020 WL 2571387, at *4 n.3 (E.D. Cal. May 21, 2020) (Under Rule 12(h)(2)(C), a defense of failure to state a claim may be raised at trial, meaning it is not forfeited by failing to file a Rule 12(b)(6) motion prior to filing an answer.).

With respect to the Buttons' request to strike Jimison's motion using Rule 12(f), this rule allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, Rule 12(f) is limited to pleadings and may not be used as the basis to strike motions. *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *Bossart v. King Cnty.*, Case No. 2:24-cv-01776-JHC, 2025 WL 459154, at *1 (W.D. Wash. Feb. 11, 2025) ("Challenges under Federal Rule of Civil Procedure 12(f) are limited to challenges to pleadings, such as a complaint or answer.").

Accordingly, the Buttons' motion to strike (Dkt. No. 21) is DENIED. The Buttons request that they be granted an additional seven days to file a response to Jimison's motion for expedited relief is also DENIED. The Court notes the Buttons have not filed a response to Jimison's motion.[3] Parties should not assume that a motion for relief from deadline will be granted and must comply with the existing deadline unless the Court orders otherwise. Local Civil Rule 7(j).

**B. UPEPA**

1. Matter of Public Concern

Jimison argues UPEPA applies to this cause of action because his Instagram post concerned a lawsuit in which multiple women accused the Buttons of sexual assault. (Dkt. No. 18 at 13–14.) Jimison points to the language of the Buttons' Complaint, which asserts the lawsuit was "highly publicized" and generated "widespread global media coverage." (Dkt. No. 5 at 7–8.) The Buttons argue Jimison has never commented on matters of public concern using his Instagram account, which largely focuses on automobiles, motorsports, and firearms. (Dkt. No.

---

[3] The Court notes the Buttons did present several arguments in response to Jimison's motion for expedited relief. However, these arguments were presented in a reply brief after the Buttons received notice of Jimison's intent to file the motion, but before the motion itself was actually filed. (*See* Dkt. No. 16 at 8–15.) The Buttons did not respond to Jimison's motion after it was filed, and the Court might be justified in construing their failure to respond as an admission that the motion has merit. *See* Local Civil Rule 7(b)(2) ("Except for motions for summary judgment, if a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit.") The Buttons have not asked the Court to consider their pre-emptive response when evaluating Jimison's motion. However, in consideration of the Buttons' pro se status, and given the consequences for them if the Court grants Jimison's motion, the Court will evaluate, to the extent possible, the arguments presented by the Buttons in their pre-emptive response. The Court notes that it has previously admonished the Buttons for relying upon fictious case law to present these arguments (Dkt. No. 16 at 3–5), and to the extent their arguments rely upon these fictious citations, the Court will not consider them.

ORDER GRANTING SPECIAL MOTION FOR EXPEDITED RELIEF (DKT. NO. 18) - 7

16 at 13.)  The Buttons contend Jimison's post was a "deliberate, targeted attack" rather than a good faith commentary on a matter of public concern, and presented a "sensationalized and misleading narrative" authored by Jimison himself.  (*Id.*)

"Whether speech is a matter of public concern is a question of law, which courts must determine 'by the content, form, and context of a given statement, as revealed by the whole record.'"  *Jha*, 520 P.3d at 477 (internal citations omitted).  Speech involves matters of public concern "when it can be fairly considered as relating to any matter of political, social, or other concern to the community."  *Spratt v. Toft,* 324 P.3d 707, 713 (Wash. Ct. App. 2014) *(*quoting *Snyder v. Phelps,* 562 U.S. 443, 453 (2011)).  Under UPEPA, courts broadly construe whether speech is a matter of public concern, and accusations of sexual assault, presented in a highly publicized lawsuit, are a matter of concern to the community.[4]  *See M.G.*, 566 P.3d at 146–147 (finding on-going concern about the sexual assault of young women and a school's response to reports of such assaults was a matter of public concern.).

2.  Statutory Exceptions

The Buttons did not respond to Jimison's motion, and thus do not allege that any of UPEPA's twelve statutory exceptions apply in this case.  *See* Wash. Rev. Code § 4.105.010(3)(a).

3.  Failure to State a Cause of Action Upon Which Relief Can be Granted

---

[4] The Buttons do argue that defamatory statements about private individuals "do not become matters of public concern merely because they touch on litigation."  However, as the Court noted in its prior order (Dkt. No. 17 at 4 n.1) the case cited by the Buttons for this proposition does not appear to exist.  The Buttons similarly argue UPEPA protects speech "on issues of legitimate public debate" rather than private disputes, but this quote does not appear in the case cited by the Buttons.

ORDER GRANTING SPECIAL MOTION FOR EXPEDITED RELIEF (DKT. NO. 18) - 8

Jimison argues the Buttons' claims fail because they were filed well beyond the statutory limitations period. (Dkt. No. 18 at 15–18.) Jimison contends the Buttons filed their lawsuit nearly four years after the only allegedly defamatory statement the Buttons identify with any specificity, namely the Instagram post published on September 30, 2021. (*Id.* at 15–16.) Jimison contends the Buttons' defamation and false light claims are subject to a two-year statute of limitations, while their claims for tortious interference and intentional infliction of emotional distress are subject to a three-year statute of limitations. (*Id.* at 16.)

The Buttons' complaint argues the statute of limitations should be equitably tolled under the discovery rule. (Dkt. No. 5 at 10–11.) The Buttons contend they acted with diligence to discover Jimison's identity, but were delayed by Jimison's "concealment and deletion of evidence" which made identification "nearly impossible." (*Id.*) To determine when a cause of action accrues, courts will generally apply the "discovery rule." *Killian v. Seattle Pub. Schs.*, 403 P.3d 58, 63 (Wash. 2017). Under the discovery rule, "a cause of action accrues when the plaintiff knew or should have known the essential elements of the cause of action." *Id.* (quoting *Allen v. State*, 826 P.2d 200, 203 (Wash. 1992)). "The discovery rule does not alter the statute of limitations. It is . . . a rule for determining when a cause of action accrues and [when] the statute of limitations commences to run." *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 146 P.3d 423, 434 (Wash. 2006). Thus, once a party discovers the essential elements of the cause of action, the statute of limitations begins to run.

Equitable tolling "is an extraordinary form of relief because the rules at issue generally reflect the public policy of the state as enacted by the legislature." *Fowler v. Guerin*, 515 P.3d 502, 506 (Wash. 2022). Under Washington law, a plaintiff seeking equitable tolling of the statute of limitations in a civil suit "must demonstrate that such extraordinary relief is warranted

because (1) the plaintiff has exercised diligence, (2) the defendant's bad faith, false assurances, or deception interfered with the plaintiff's timely filing, (3) tolling is consistent with (a) the purpose of the underlying statute and (b) the purpose of the statute of limitations, and (4) justice requires tolling the statute of limitations." *Fowler*, 515 P.3d at 509.

Jimison argues the Buttons have not alleged facts necessary for equitable tolling of the statute of limitations.  (Dkt. No. 18 at 17.)  Jimison contends the Buttons do not allege they were unaware of the Instagram post prior to the expiration of the statute of limitations and concede the allegedly defamatory statements were never deleted or otherwise hidden from them.  (*Id.*)  Jimison argues the Buttons' Complaint acknowledges his Instagram account was "high-profile" and had "considerable influence" in the automotive and motorsports community in which Mitchell Button worked.  (*Id.*)

Jimison argues the anonymity of his Instagram account should not have prevented the Buttons from filing a lawsuit within the statutory period, since they could have brought their claims against a "John Doe" defendant and sought discovery to learn the identity of the individual behind the Instagram account.  (*Id.* at 18.)  Jimison cites a recent order from the Southern District of New York dismissing another defamation lawsuit brought by the Buttons.  *Button v. Breshears*, Case No. 1:24-cv-03757-MKV, 2025 WL 2771663 (S.D.N.Y. Sept. 26, 2025).  In that case, which also stemmed from anonymous Instagram posts, the Southern District found the Buttons had not explained how the anonymity of the Instagram account reasonably prevented them from filing a timely lawsuit "when they could have filed a suit against a 'Jane Doe' defendant and thereafter sought discovery to learn the defendant's identity." *Id.* at *12.

The Court finds the reasoning of the Southern District in the *Breshears* case applicable here.  The Buttons were aware of the Instagram post long before the statute of limitations period

ORDER GRANTING SPECIAL MOTION FOR EXPEDITED RELIEF (DKT. NO. 18) - 10

expired, and were not prevented from filing a lawsuit against a John Doe defendant within that period. The Court therefore finds no reason to toll the statute of limitations. The Buttons' defamation and false light claims are therefore barred by the statute of limitations. Wash. Rev. Code § 4.16.100(1) (setting forth the two-year statute of limitations for defamation claims); *Eastwood v. Cascade Broad. Co.*, 722 P.2d 1295, 1299 (Wash. 1986) (finding the two-year statute of limitations applies to false light claims). The Court similarly finds the Buttons' claims for tortious interference and intentional infliction of emotional distress barred by the statute of limitations. Wash. Rev. Code § 4.16.080; *City of Seattle v. Blume*, 947 P.2d 223, 251 (Wash. 1997) ("[T]he limitations period for a cause of action for tortious interference is three years[.]"); *Townsley v. Lifewise Assurance Co.*, Case No. C15-1228-JCC, 2016 WL 1393548, at *3 (W.D. Wash. April 8, 2016) (Under Washington law, intentional infliction of emotional distress is subject to, at most, a three-year limitations period).

Accordingly, the Court will dismiss this action with prejudice pursuant to UPEPA because the Buttons have failed to state a cause of action upon which relief can be granted. However, even if the statute of limitations was not a bar, the Court would still dismiss the Buttons' claims because they have failed to establish a prima facie case as to each essential element of the causes of action asserted.

    4. <u>Prima Facie Case</u>

       *i. Defamation*

To establish a prima facie defamation claim under Washington law, a plaintiff must show: (1) that the defendant's statement was false; (2) that the statement was unprivileged; (3) that the defendant was at fault; and (4) that the statement proximately caused damages. *M.G. v. Bainbridge Island School District #303*, 566 P.3d 132, 147 (Wash. Ct. App. 2025).

ORDER GRANTING SPECIAL MOTION FOR EXPEDITED RELIEF (DKT. NO. 18) - 11

a.    Falsity of Jimison's Statement

The Buttons argue Jimison's Instagram post "deliberately distorted" the *Boston Globe* article by omitting qualifiers such as "alleged" and not clarifying that the Nevada litigation was a civil matter.  (Dkt. No. 5 at 3.)  Jimison argues his Instagram post accurately described the allegations asserted against the Buttons in the Nevada litigation.  (Dkt. No. 18 at 18–19.)

"In proving falsity for a defamation claim, a plaintiff must prove either a statement was false or a statement left a false impression by omitted facts." *Seaquist v. Caldier*, 438 P.3d 606, 612 (Wash. Ct. App. 2019).  "A provably false statement is one that, as a statement of either fact or opinion, falsely expresses or implies provable facts about the plaintiff." *Id.*  "A defendant is not required to prove the literal truth of every claimed defamatory statement." *Id.* at 613.  Rather, "[t]he gist of the story or the portion carrying the 'sting' must be substantially true." *Id.*

First, the Court notes that Jimison's Instagram post does include the qualifiers and clarifications the Buttons claimed he omitted.  The Instagram post quotes the *Boston Globe* article, which explicitly describes the Nevada litigation as a "lawsuit" rather than a criminal matter, and classifies the claims in the lawsuit as allegations.  (Dkt. Nos. 19 at 3; 20 at 78–81.)  The remainder of Jimison's post quotes verbatim from the *Boston Globe* article, which itself accurately describes the allegations set forth in the Nevada litigation and includes a quote from the attorney representing the plaintiffs in the Nevada litigation.  (*Id.*)  Jimison's post concludes by encouraging any victims to "reach out to law enforcement."  (Dkt. No. 19 at 4.)

The Buttons have not identified any statements in Jimison's Instagram post that could be construed as false.  While the Buttons may dispute the allegations against them in the Nevada litigation, Jimison's post accurately describes the allegations set forth by the plaintiffs in that case, and does not include language that would leave the reader with a false impression. *Maison*

ORDER GRANTING SPECIAL MOTION FOR EXPEDITED RELIEF (DKT. NO. 18) - 12

*de France, Ltd. v. Mais Oui!, Inc.*, 108 P.3d 787, 794 (Wash. Ct. App. 2005) ("Truth is an absolute defense to a per se defamatory statement.").

The Buttons' Complaint further alleges Jimison has "since repeated similar defamatory statements, including in 2025, both online and in person." (Dkt. No. 5 at 4.)  The Buttons claim Jimison has "continued to repeat defamatory statements in 2025 to third parties both online and in person," and has "made further defamatory statements about [the Buttons] via social media platforms, text messages, and online forums." (*Id.* at 10, 12.)

Jimison argues these non-specific allegations are insufficient to state a claim under the federal rules. (Dkt. No. 18 at 14–15.)  Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted).  "Defamation claims, in particular, must be advanced with sufficient specificity." *Harris v. City of Seattle*, 315 F. Supp. 2d 1112, 1123 (W.D. Wash. 2004).

Here, the Buttons' complaint fails to set forth any allegations concerning the precise statements Jimison allegedly made to third parties, to whom they were made, or precisely when they were made.  These conclusory allegations cannot support a claim for defamation. *Flowers v. Carville*, 310 F.3d 1118, 1131 (9th Cir. 2002) (finding a defamation claim was sufficiently plead when plaintiff "list[ed] the precise statements alleged to be false and defamatory, who made them and when."); *Phillips v. World Publ'g Co.*, 822 F. Supp. 2d 1114, 1118 (W.D. Wash. 2011) ( "Nowhere in the complaint has plaintiff alleged when or where such statements were made, or what statements were actually made by defendant . . . [plaintiff's] complaint against the

ORDER GRANTING SPECIAL MOTION FOR EXPEDITED RELIEF (DKT. NO. 18) - 13

[defendant] fails on this deficiency alone as such scattershot and unsubstantiated allegations cannot withstand a motion to dismiss.").

b.   Whether Jimison's Statement Was Privileged

Jimison argues the Buttons' complaint should be dismissed because his statements are protected by the First Amendment's fair report privilege. (Dkt. No. 18 at 20–22.) "Certain privileges shield a speaker from liability for defamation and false light, regardless of the truth or falsity of the statement." *Jha*, 520 P.3d at 482. Under Washington law, the fair reporting privilege provides that a defendant's statements are privileged when the defendant is "reporting on defamatory statements contained in official proceedings and records." *Id.* The fair reporting privilege applies to any type of media, including blogs and webpages, "so long as (1) the report is attributable to an official proceeding and (2) the report is an accurate or a fair abridgment of the official report." *Jha*, 520 P.3d at 483 (quoting *McNamara v. Koehler*, 429 P.3d 6, 11 (Wash. Ct. App. 2018)). "For a report to be a fair abridgement of an official proceeding, surgical precision is not required so long as the report is substantially accurate and fair." *Id.* (internal citations omitted).

Here, the Court finds Jimison's Instagram post was attributable to an official proceeding, namely the Nevada litigation. Jimison's post discussed the allegations against the Buttons, quoting from a *Boston Globe* article reporting on the Nevada lawsuit. As discussed above, Jimison's post largely quoted from the *Boston Globe* article, which presented an accurate and fair abridgment of the complaint filed in the Nevada litigation. Under the fair reporting privilege, it is not necessary for the defendant to cite directly to the source of the statement "so long as it is apparent that the statement is quoting, paraphrasing, or otherwise drawing upon official documents or proceedings." *Id.* at 485 (internal citations and quotation marks omitted).

ORDER GRANTING SPECIAL MOTION FOR EXPEDITED RELIEF (DKT. NO. 18) - 14

Accordingly, the Court finds the fair reporting privilege applies to Jimison's Instagram post, and the Buttons have therefore failed to establish the first two elements of a prima facie defamation claim.

### ii. False Light

To the extent the Buttons asserts a false light claim (Dkt. No. 5 at 11–12), any such claim fails for the same reasons as their defamation claim. "False light differs from defamation in that it focuses on compensation for mental suffering, rather than reputation." *Corey v. Pierce Cty.*, 225 P.3d 367, 373 (Wash. Ct. App. 2010). Nevertheless, "like defamation, false light claims require a showing of falsity and knowledge of, or reckless disregard for that falsity." *Id.* "A false light claim arises when 'someone publicizes a matter that places another in a false light if (a) the false light would be highly offensive to a reasonable person and (b) the actor knew of or recklessly disregarded the falsity of the publication and the false light in which the other would be placed.'" *Id.*

Because the Buttons cannot establish the existence of a false statement, they cannot establish a prima facie case for false light. *Jha*, 520 P.3d at 479 ("No prima facie case of invasion of privacy by false light exists if the statement is true."); *Phillips*, 822 F. Supp. 2d at 1121 ("Defendant is correct that plaintiff's false light claim simply duplicates his defamation claim. Both require a showing of false statements. The Court has determined that plaintiff failed to adequately allege any false statements by [defendant]. This determination is dispositive of the false light claim.").

### iii. Intentional Infliction of Emotional Distress

The Buttons allege Jimison's conduct was "extreme, reckless, and intended to cause

ORDER GRANTING SPECIAL MOTION FOR EXPEDITED RELIEF (DKT. NO. 18) - 15

emotional harm." (Dkt. No. 5 at 11–12.)  Jimison argues the Buttons cannot allege a prima facie case of intentional infliction of emotional distress.  (Dkt. No. 18 at 24–25.)

"The tort of outrage[5] requires the proof of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003).  "The first element requires proof that the conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Robel v. Roundup Corp.*, 59 P.3d 611, 619 (Wash. 2002) (emphasis omitted) (internal quotation marks omitted) (quoting *Dicomes v. State*, 782 P.2d 1002 (Wash. 1989)).  "[T]he tort of outrage 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'  In this area plaintiffs must necessarily be hardened to a certain degree of rough language, unkindness and lack of consideration." *Kloepfel*, 66 P.3d at 632 (quoting *Grimsby v. Samson*, 530 P.2d 291, 295 (Wash. 1975)).  An outrage claim may not proceed unless "reasonable minds could not differ on whether the conduct was so extreme as to result in liability." *Robel*, 59 P.3d at 619.

To the extent the Buttons' claim for intentional infliction of emotional distress is predicated on Jimison's alleged defamatory statements, it cannot survive the dismissal of their defamation claim. *Leidholdt v. L.F.P. Inc.*, 860 F.2d 890, 893 n.4 (9th Cir. 1988) ("An emotional distress claim based on the same facts as an unsuccessful libel claim cannot survive as an independent cause of action[.]"); *Phillips*, 822 F. Supp. 2d at 1119 ("In the absence of a claim for defamation, plaintiff's claim of intentional infliction of emotional distress (outrage) also

---

[5] "'Outrage' and 'intentional infliction of emotional distress' are synonyms for the same tort." *Kloepfel v. Bokor*, 66 P.3d 630, 631 n.1 (Wash. 2003).

fails."). There is no plausible argument that the conduct at issue here, citing a news article which accurately reported on a lawsuit against the Buttons, would be problematic, let alone "utterly intolerable in a civilized community" such that it would give rise to a claim for intentional infliction of emotional distress.

Accordingly, the Buttons have failed to establish a prima facie case of intentional infliction of emotional distress.

### iv.    Tortious Interference

The Buttons assert Jimison intentionally disrupted their business relationships and economic expectancies "through false and malicious statements." (Dkt. No. 5 at 13.) Jimison argues the Buttons have failed to establish a prima facie case of tortious interference. (Dkt. No. 18 at 25–26.)

Under Washington law, a plaintiff claiming tortious interference with a contractual relationship or business expectancy must prove five elements: 1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage. *Tacoma Auto Mall, Inc. v. Nissan North America, Inc.*, 279 P.3d 487, 498 (Wash. Ct. App. 2012).

Claims for tortious interference "are subject to the same First amendment requirements that govern actions for defamation." *Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009); *see also Straw v. Avvo Inc.*, Case No. C20-0294JLR, 2020 WL 5066939 at *5 n. 4 (W.D. Wash. Aug. 27, 2020) (collecting cases). Unless a defendant "can be found liable for defamation, the intentional interference with contractual relations count is not actionable[.]" *Redco Corp. v.*

*CBS, Inc.*, 758 F.2d 970, 973 (3d Cir. 1985).  The constitutional requirements for defamation "must equally be met for a tortious interference claim based on the same conduct or statements"; otherwise "a plaintiff may . . . avoid the protection afforded by the Constitution . . . merely by the use of creative pleading." *Beverly Hills Foodland, Inc. v. United Food & Commercial Workers Union, Local 655*, 39 F.3d 191, 196 (8th Cir. 1994).

The Buttons cannot establish a prima facie claim for tortious interference because it is based upon the same constitutionally protected statements as their defamation claim.

### v.   Civil Conspiracy

The Buttons argue Jimison "conspired with others to defame [the Buttons] and evade detection." (Dkt. No. 5 at 13.)  The Buttons claim "individuals acting in concert" with Jimison "disseminated false statements across private group chats, industry communications, and anonymous forums." (*Id.* at 14.)  Jimison argues the Buttons cannot establish a prima facie case with respect to civil conspiracy because the underlying claim upon which it depends, defamation, is barred by the statute of limitation and otherwise fails to state a claim upon which relief can be granted. (Dkt. No. 18 at 26–28.)

To establish a civil conspiracy, Plaintiffs "must prove by clear, cogent, and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy." *All Star Gas, Inc., of Washington v. Bechard*, 998 P.2d 367, 372 (Wash. Ct. App. 2000).  "[C]ivil conspiracy is not, by itself, an actionable claim; plaintiff must be able to show an underlying actionable claim which was accomplished by the conspiracy for the civil claim of conspiracy to be valid[.]" *Reiber v. City of Pullman*, 918 F.

ORDER GRANTING SPECIAL MOTION FOR EXPEDITED RELIEF (DKT. NO. 18) - 18

Supp. 2d 1091, 1095 (E.D. Wash. 2013) (citing *W.G. Platts, Inc. v. Platts*, 438 P.2d 867, 871 (Wash. 1968)).

For the reasons discussed above, the actionable claims at issue here are barred by the statute of limitations and otherwise fail to establish a prima facie case as to each essential element. Further, the Buttons' conclusory claim that Jimison "conspired with others" and "act[ed] in concert" with unidentified individuals is insufficient to establish a prima facie case. *Neravetla v. Virginia Mason Med. Ctr.*, No. C13-1501-JCC, 2014 WL 12787876, *3–*4 (W.D. Wash. May 23, 2014) (dismissing a civil conspiracy with prejudice where the court was "unable to find facts supporting Plaintiff's claim that there was an agreement" beyond the "bare assertion that there was a 'joint undertaking.'").

Accordingly, Jimison's motion for special expedited relief (Dkt. No. 18) is GRANTED in its entirety and the Buttons' Complaint is DISMISSED with prejudice.

5.   Ongoing Citation to Fictious Case Law

In its order dated October 17, 2025, the Court noted the Buttons had, in their reply, cited several non-existent cases and other cases that did not support the propositions advanced by the Buttons. (Dkt. No. 17 at 3.) The Court cited numerous examples of instances where the Buttons did so. (*Id.* at n. 1.) The Court advised the Buttons that they were responsible for verifying that all information and all citations submitted were accurate and real pursuant to Federal Rule of Civil Procedure 11. (*Id.*) The Court advised the Buttons not to rely upon artificial intelligence programs to conduct research or draft legal arguments. (*Id.*) To address the Buttons' use of fictious case law, the Court required the Buttons to include, on the last page of all future filings, a certification that they had reviewed each court decision cited in the filing, certified that each decision cited was a valid decision and that any language quoted from a decision that is included

ORDER GRANTING SPECIAL MOTION FOR EXPEDITED RELIEF (DKT. NO. 18) - 19

in the filing was accurate. (*Id.* at 5.) The Court informed the Buttons that any filings citing a court decision but not including this certification would be stricken and not considered. (*Id.*)

Since the Court issued its order, the Buttons have filed several additional motions and pleadings. (*See* Dkt. Nos. 21, 23, 25, 27.) While these filings do include the required certification, several of them also include citations to non-existent cases or cases which do not support the proposition advanced by the Buttons. Examples include:

- On page 4 of their reply brief, the Buttons cite two Ninth District cases for the propositions that Rule 12(b) motions "must be filed before the responsive pleading" and a party that files an answer "may not thereafter file a Rule 12(b) motion." (Dkt. No. 23 at 4.) These quotes do not appear in the opinions cited by the Buttons.

- On page 4 of their reply brief, the Buttons cite a district court case for the proposition that striking an answer "does not resuscitate" waived defenses. (Dkt. No. 23 at 4.) The Court was unable to locate the case cited, nor was the Court able to find the quote cited by the Buttons in any Ninth Circuit opinion.

- On page 5 of their reply brief, the Buttons cite a Ninth Circuit case for the proposition that Rule 12(c) requires "closed pleadings." (Dkt. No. 23 at 5.) This quote does not appear in the opinion cited by the Buttons.

- On page 5 of their reply brief, the Buttons cite a Sixth Circuit case for the proposition that the Court may strike "entire documents where scandalous or irrelevant matter dominates." (Dkt. No. 23 at 5.) The Court was unable to locate this case.

- On page 6 of their reply brief, the Buttons cite a case for the proposition that Courts have condemned efforts to paint individuals like them as serial litigants. (Dkt. No. 23 at 6.)  The Court was unable to locate this case.

- On page 3 of their "Notice of Supplemental Information" the Buttons cite a district court case for the proposition that a notice of unavailability "is not recognized in federal practice and carries no legal effect."  (Dkt. No. 27 at 3.) The Court was unable to locate this case, and the citation included in the Buttons' submission leads to a different case that does not appear to advance the proposition asserted.

Per the Court's prior order, the Court STRIKES the Buttons' pleadings (Dkt. Nos. 23, 27) that include fictitious citations.  The Court notes that other district courts have recently admonished the Buttons for including fictious citations in their filings.  *See Button v. Doherty*, Case No. 24 Civ. 5026 (JPC) (KHP), 2025 WL 2776069 at *5 n. 7 (S.D.N.Y. Sept. 30, 2025); *Button v. Humphries*, Case No. 8:24-cv-01730-JVS-DFM, 2025 WL 2994725 at *4 n. 2 (C.D. Cal. Sept. 12, 2025).  The Court cautions the Buttons that further filings including fictious citations may lead to the imposition of sanctions.

   6.  Attorney Fees and Costs

On a special motion for expedited relief filed pursuant to UPEPA, the Court "shall award court costs, reasonable attorneys' fees, and reasonable litigation expenses related to the motion . . . [t]o the moving party if the moving party prevails on the motion[.]"  Wash. Rev. Code § 4.105.090(1).  Here, Jimison has prevailed on the motion for expedited relief.

# IV.    ORDER

Jimison's special motion for expedited relief (Dkt. No. 18) is GRANTED.  The Buttons' motion to strike (Dkt. No. 21) is DENIED.  The Court STRIKES those filings (Dkt. Nos. 23, 27) that include fictitious citations.  All other pending motions are DENIED as moot.  Jimison shall file his motion for attorney fees within 21 days of this order.

Dated this 20th day of January, 2026.

David G. Estudillo
United States District Judge

ORDER GRANTING SPECIAL MOTION FOR EXPEDITED RELIEF (DKT. NO. 18) - 22